IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Criminal Action No. 23-cr-00128-NYW-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ALEXANDER GAROUTTE,

    Defendant.

---

### ORDER ON MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

This matter is before the Court on the letter submitted by Defendant Alexander Garoutte in which he requests early termination of his supervised release (the "Motion" or "Motion for Early Termination of Supervised Release"). [Doc. 2]. The Court has reviewed the Motion, the responses from the Government and the United States Probation Office, and the applicable case law. For the reasons set forth in this Order, the Motion for Early Termination of Supervised Release is respectfully **DENIED without prejudice**.

### BACKGROUND

On April 23, 2018, Alexander Garoutte ("Mr. Garoutte") was sentenced in the Western District of North Carolina to 80 months' imprisonment after pleading guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C). [Doc. 1-1 at 1–2]. He was also sentenced to three years' supervised release. [*Id.* at 3]. On June 17, 2019, the Western District of North Carolina court, on motion from the Government, reduced Mr. Garoutte's sentenced to 66 months' imprisonment. [Doc. 1-2 at 1]. Mr. Garoutte was

released from custody and his term of supervised release began on June 27, 2022. [Doc. 7 at 1]. He has served approximately 17 months of his 36-month term of supervision. Jurisdiction over Mr. Garoutte's supervised release was transferred to this District on July 31, 2023. [Doc. 1 at 1].

Mr. Garoutte now moves the Court for early termination of his supervised release. *See generally* [Doc. 2]. The Government and the United States Probation Office ("Probation Office") each filed responses in opposition to Mr. Garoutte's request. [Doc. 5; Doc. 7]. Mr. Garoutte did not file a reply, and the time to do so has elapsed. [Doc. 3]. Accordingly, the matter is fully briefed, and the Court considers Mr. Garoutte's request below.

## LEGAL STANDARD

Congress established the system of supervised release in 1984, *United States v. Haymond*, 588 U.S. ---, 139 S. Ct. 2369, 2382 (2019), with the intention to "assist individuals in their transition to community life," *United States v. Johnson*, 529 U.S. 53, 59 (2000). Indeed, unlike parole, "supervised release wasn't introduced to replace a portion of the defendant's prison term, only to encourage rehabilitation *after* the completion of his prison term." *Haymond*, 139 S. Ct. at 2382 (citing United States Sentencing Commission, Guidelines Manual ch. 7, pt. A(2)(b) (Nov. 2012) (emphasis in original)). "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 53–54.

A trial court may terminate a term of supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In so doing, the Court considers certain sentencing factors set forth in 18 U.S.C. § 3553, including:

- The nature and circumstances of the offense and the history and characteristics of the defendant;

- The need for the sentence imposed to afford adequate deterrence to criminal conduct;

- The need for the sentence imposed to protect the public from further crimes of the defendant;

- The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

- The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant;

- Any pertinent policy statements;

- The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

- The need to provide restitution to any victims of the offense.

*Id.* §§ 3553(a)(1), (a)(2)(B)–(D), (a)(4)–(7); *see also id.* § 3583(e) (permitting a court to terminate supervised release after considering "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)"); *but see United States v. Warren*, 650 F. App'x 614, 615 (10th Cir. 2016) ("[Section] 3583(e)(1) requires consideration of § 3553(a) when a district court *terminates* supervised release. However, it is unclear whether § 3583(e)(1) requires consideration of the § 3553(a) factors when denying a motion to terminate supervised release." (emphasis in original)). Whether to grant a motion to terminate a term of supervised release is in the Court's discretion. *Rhodes v. Judisak*, 676 F.3d 931, 933 (10th Cir. 2011).

## ANALYSIS

Mr. Garoutte requests that his term of supervised release, set to conclude on or about June 26, 2025, be terminated early. *See generally* [Doc. 2]. While Mr. Garoutte does not address any specific § 3553 factors, he states that he understands the gravity of and has taken full responsibility for his actions that led to his conviction. [*Id.* at 1]. He states that he has made significant progress

3

during his supervision thus far, having completed all court-mandated programs, has maintained regular employment, and has had personal successes. [*Id.*]. He represents that he has strong support from his family and his community, has secure housing and employment, and that he no longer needs to remain under supervision to live a "productive and lawful life." [*Id.*].

The Government opposes the Motion. The Government notes that most of the record from the underlying Western District of North Carolina case is sealed, such that the Government is "[w]ithout direct knowledge of the underlying crime and [Mr. Garoutte's] background," and the Government states it "can only surmise that [Mr. Garoutte's] conduct was so serious as to justify a felony conviction and substantial prison and supervision sentence." [Doc. 5 at 2 (footnote omitted)]. The Government highlights that, as of the time it filed its Response, Mr. Garoutte had only served approximately 14 months of his 36-month term of supervised release, and argues that serving only one-third of a term of supervision is too lenient and will not provide any meaningful general or specific deterrence from future crime. [*Id.*]. In addition, the Government applauds Mr. Garoutte for his success on supervised release but argues that "simple success on supervised release should be expected, not serve as an automatic exceptional circumstance that justifies early termination." [*Id.*]. The Government posits instead that Mr. Garoutte's success may demonstrate continued justification for supervision. [*Id.* at 3].

The Probation Office also opposes early termination at this time. *See* [Doc. 7]. It represents that Mr. Garoutte's Post-Conviction Risk Assessment ("PCRA") score is "Low Moderate," and that of the offenders in this category, 2% have their supervision revoked and 7% are rearrested in the next 12 months. [*Id.* at 1]. The USPO also states that Mr. Garoutte has scored as a "Violence Category 3." [*Id.*]. The Probation Office explains that the violence assessment tool "identifies static factors for persons on supervision, and it then incorporates these factors into the

4

violence reduction algorithms of the PCRA." [*Id.*]. The Probation Office represents that these static factors "are strongly correlated with future violence" and states that Violence Category 3 is the highest category of risk for violence, and Mr. Garoutte's score in this category "indicates [he] has a high risk of committing a violent crime while on supervision." [*Id.* at 1–2]. The Probation Office also represents that Mr. Garoutte has "made progressive strides while on supervision," has completed his required dual diagnosis treatment, and has remained free from illicit substance abuse. [*Id.* at 2]. The Court notes that both the Government and the Probation Office indicate that they may be willing to reconsider Mr. Garoutte's request once he passes the halfway mark of his supervision. [*Id.*; Doc. 5 at 2].

The Court first considers the nature and circumstances of the offense and the history and characteristics of Mr. Garoutte. *See* 18 U.S.C. § 3553(a)(1). Mr. Garoutte was convicted of conspiracy to distribute and possess with intent to distribute cocaine. [Doc. 1-1 at 1]. He was originally sentenced to 80 months' imprisonment, but this sentence was later reduced to 66 months' imprisonment. [Doc. 1-2 at 1]. At the time it reduced Mr. Garoutte's sentence, the Western District of North Carolina court found that Mr. Garoutte's offense level was 25 and his criminal history category was II. *See* [*id.*]. In addition, while the Probation Office scores Mr. Garoutte in the "Low Moderate" category of the PCRA, it also represents that Mr. Garoutte remains scored at the highest possible category for risk of committing a violent crime while on supervision. [Doc. 7 at 2–3]. The Court gives weight to the Probation Office's assessment, as it is "in the best position to assess [Mr. Garoutte's] adjustment to supervision to date, his potential for recidivism, and the need (or lack thereof) for continued supervision." *United States v. Nelson*, No. 17-CR-424 (PKC), 2022 WL 125814, at *2 (E.D.N.Y. Jan. 13, 2022).

5

The Court also notes and commends Mr. Garoutte's accomplishments during the term of his supervised release. *See, e.g.*, [Doc. 2 at 1; Doc. 7 at 2]. However, *at this time*, the Court finds that the serious nature of Mr. Garoutte's crime and his high risk of violence outweigh his behavior since his conviction. *See United States v. Lynn*, No. CR S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (noting the movant's "exemplary behavior," but concluding that "the serious nature of [his] crimes and [his] history and characteristics significantly outweigh[ed] [his] actions after his . . . release from prison"). Indeed, courts routinely find that compliance with terms of supervised release is not a sufficient basis to terminate that supervised release. *See, e.g.*, *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Mitchell*, No. 1:13-cr-538-RMB, 2020 WL 64541, at *2 (D.N.J. Jan. 7, 2020) ("[M]ere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination." (quoting *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003))). Furthermore, the Court notes that "[t]he fact of compliance [with the terms of supervised release] may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community." *United States v. McCain*, No. CR 95-36-8, 2021 WL 2355687, at *4 (W.D. Pa. June 9, 2021). Thus, the circumstances and characteristics of the defendant, 18 U.S.C. § 3553(a)(1), as well as the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes, *id.* §§ 3553(a)(2)(B)–(C), weigh against early termination at this time.

The Court also considers the need for the sentence imposed to reflect the seriousness of the offense and the need to avoid unwarranted sentencing disparities. *Id.* §§ 3553(a)(2)(A), (a)(6).

Mr. Garoutte was originally sentenced to 80 months' imprisonment, with three years of supervised release, and his sentence was then reduced to 66 months' imprisonment, with three years of supervised release. [Doc. 1-2 at 1]. Mr. Garoutte has not yet reached the halfway point of his term of supervision; he filed his motion when he had served approximately 14 months of his term, and he has now served approximately 17 months of his term. The Court cannot conclude that these factors weigh in favor of early termination where Mr. Garoutte has already had his sentence of incarceration reduced and granting early termination at this juncture would be a significant departure from the three-year term of supervised release imposed. *Cf. United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *2 (E.D. La. June 13, 2023) (denying motion for early termination where early termination "would be a significant reduction of [the] term of supervised release—after it was already reduced by two years due to the First Step Act"); *United States v. Girard*, No. CRIM. 10-82, 2014 WL 1091225, at *1 (W.D. Pa. Mar. 19, 2014) (finding that early termination would not be in the interests of justice where it would "result in a sentence that would not be sufficient to comply with the sentencing factors set forth in § 3553(a)").

    The Court notes that both the Government and the Probation Office imply that they would be amenable to supporting early termination after Mr. Garoutte reaches the halfway point of his term of supervision, should Mr. Garoutte continue his success on supervised release. [Doc. 5 at 2; Doc. 7 at 2]. However, the Court respectfully declines to rely on these hypothetical, contingent positions at this time. Rather, the Court finds it most appropriate, and most efficient, to deny Mr. Garoutte's Motion without prejudice, with leave to refile, once Mr. Garoutte has completed a more significant portion of his term of supervised release. Should Mr. Garoutte renew his request for early termination, the Court will then receive updated position statements from the Government and the Probation Office indicating whether the circumstances of Mr. Garoutte's request or their

7

positions on early termination have changed.[1] In addition, more information from the United States District Court for the Western District of North Carolina may also help inform this Court's consideration.

In sum, the Court cannot conclude, at this time, that early termination of Mr. Garoutte's supervised release is in the interests of justice. Should Mr. Garoutte continue his success on supervised release, he may file another motion once he has competed a more substantial portion of his supervised-release term.

## CONCLUSION

For these reasons, it is **ORDERED** that:

(1) The Motion for Early Termination of Supervised Release [Doc. 2] is respectfully **DENIED without prejudice**, with leave to refile once Mr. Garoutte has completed a more significant portion of his term of supervised release; and

(2) The Clerk of Court shall mail a copy of this Order to:

> Alexander Garoutte
> 4465 Parfet Street
> Wheat Ridge, CO 80401

DATED:  November 27, 2023                BY THE COURT:

_____
Nina Y. Wang
United States District Judge

---

[1] To be clear, the Court does not suggest that it will necessarily grant any renewed motion filed by Mr. Garoutte so long as it is filed after he completes 18 months of his 36-month term. The Court will grant early termination of supervised release only if, after considering the § 3553 factors, "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1).